CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

DEC 07 2007

JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| JAY C. DENNIS, | ) | CASE NO. 3:07CV00003 |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security[1], | ) | By: B. Waugh Crigler U. S. Magistrate Judge |
| Defendant. | ) | |

This challenge to a final decision of the Commissioner which denied plaintiff's April 24, 2004 claim for a period of disability and disability insurance benefits under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416 and 423, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter REVERSING the Commissioner's final decision, GRANTING plaintiff's motion for summary judgment, ENTERING judgement for the plaintiff and RECOMMITTING the case to the Commissioner solely for the award of proper benefits.

In a decision dated September 8, 2006, which was eventually adopted by the

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, he should be substituted for Jo Anne B. Barnhart, Commissioner of Social Security, as the defendant.

Commissioner as a final agency decision, an Administrative Law Judge ("Law Judge") found that plaintiff suffered post-traumatic stress syndrome ("PTSD") with depression, which he found to be a severe impairment, but not severe enough to meet or equal any listed impairment. (R. 14-15.) The Law Judge further found that he had no physical limitations on his ability to perform work at all levels of exertion, and that he had the residual functional capacity ("RFC") to perform simple tasks with minimal interaction with others. (R. 15.) Disregarding the evidence of a vocational expert ("VE"), whom he called to opine on the availability of jobs within the categories of plaintiff's past relevant work, and noting that no treating source had "opined that the claimant is physically or mentally more limited" than the RFC he found to exist, the Law Judge concluded that plaintiff could perform his past relevant work as a dishwasher. (R. 16-17.) Thus, he determined that plaintiff was not disabled under the Act.

Plaintiff appealed the Law Judge's decision to the Appeals Council. (R. 9.) Finding no basis in the record or under the applicable rules to grant review, the Appeals Council denied the request for review and adopted the Law Judge's decision as a final decision of the Commissioner. (R. 5-7.) This action ensued.

The record shows that plaintiff was born July 13, 1947 and was fifty-eight years old at the time of the hearing, and that he was a ten-year military veteran who served as a combat soldier in the war in Vietnam, as the result of which he suffered service-connected PTSD. (R. 460, 465-466.) Medical records from the Community Outreach to Vietnam Era ("COVER") reflect severe PTSD from the 1970's through 1980's with notes indicating both homicidal and suicidal ideation. (R. 413-453.) COVER documents from the early 2000's reveal that plaintiff suffered both chronic and severe PTSD with paranoid and depressive features which led to his leaving

2

employment with the Postal Service in 2002 after working there since his discharge from active duty in 1978. (R. 394-395.) Records from the Department of Veterans Affairs ("VA") reveal psychiatric treatment dating back to late 1999 or early 2000 and continuing into 2003 with an in-patient admission to the Richmond VA Medical Center December 10-16, 2004, primarily for treatment of PTSD. (R. 216-275.) It appears he was suffering, *inter alia*, paranoia, increased insomnia, visual hallucinations and was thinking "about going down to the traffic light with a gun and shooting happy people." (R. 216.) Plaintiff agreed to PTSD treatment and follow-up, and he was discharged with enrollment in an out-patient treatment program. (R. 217.) Though he was seen sporadically in the mental health clinic, out-patient treatment appears to have failed because plaintiff stopped his medications, substituted alcohol for medications, and otherwise, he was not compliant with follow-up. (R. 276-278.)

Plaintiff submitted a psychological evaluation reporting the results of tests performed by Elizabeth Hrncir, Ph.D. on December 23, 2003. (R. 171-174.) Dr. Hrncir noted that plaintiff had presented at the examination "in a very agitated state," that he reported an inability to be around people, and that he continued "getting angry with both suicidal and homicidal thoughts," though he denied any homicidal ideation. (R. 173.) Dr. Hrncir opined that plaintiff suffered Major Depressive Disorder, recurrent, with severe psychotic features; chronic PTSD; a Panic Disorder with Agoraphobia; and a Generalized Anxiety Disorder with a GAF range of 35-45. (R. 174.)

The State Agency had plaintiff's medical records reviewed by consulting psychologists, A. John Kalil, Ph.D. and Sulaiha Mastan, Ph.D, both of whom furnished a Mental Residual Functional Capacity Assessment. (R.175-192, 320-335.) Among other things, Dr. Kalil noted that plaintiff "says nothing but how much he can't stand people." (R. 176.) The consultant

3

further opined that plaintiff was markedly limited in the following work-related ways: ability to sustain a routine without special supervision; and ability to complete a normal work-day or workweek or perform at a consistent pace without unreasonable rests or breaks. (R. 175-176.) Contrary to plaintiff's assertions, the most this consultant found was that several of his impairments did "not precisely satisfy the diagnostic criteria" for the mental disorders covered. (R. 182, 184, 190, 320-331.)

Dr. Mastan offered a Mental Residual Functional Capacity Assessment with an explanation that followed. (R. 332-335.) This consultant believed plaintiff could perform "simple, routine, repetitive work in a stable environment," could make "simple decisions," could "carry out very short and simple instructions," and his activities of daily living and social skills were functional from a psychiatric standpoint. (R. 335.) He also believed that plaintiff possessed a mental functional capacity to perform "simple task (sic) with minimal interaction with others." (*Id.*) This consultant did not limit plaintiff as markedly as Dr. Kalil, but he did find plaintiff "Moderately Limited" in his ability to understand and remember detailed instructions as well as in five categories under the heading "Sustained Concentration and Persistence," two categories under the heading "Social Interaction," and two categories under the heading "Adaptation." (R. 333-334.)

The VE called by the Law Judge testified primarily about plaintiff's past relevant work and its availability to him. While he opined in response to the Law Judge's questions that physically plaintiff "*could do*" his past relevant dish washing and bellman jobs, limitations on interaction with others, in turn, would limit the VE's consideration only to the dish washing job. (R. 490-491.) While the VE also opined that plaintiff would be able to perform driving tasks, he

4

further stated that "the problem" is that it would expose him to more interaction with the public or with people than he could handle. (R. 492.) The VE also revealed that none of the jobs he identified would be available to a person unable to meet the basic mental demands of a "competitive work" environment on a sustained basis. (R. 494.)

In response to questions by plaintiff's counsel, the VE testified that if he considered the evidence offered by Dr. Kalil, plaintiff would exhibit such "unmanaged or uncontrolled activity detrimental to the work space and himself in them" that it wold be "impossible to assume that there's any job he could do given those findings." (R. 495-496.) He also testified that all jobs would be eliminated if he were to consider Dr. Kalil's consultative report as well as Dr. Mastan's later psychiatric review technique because the "sheer number" of limitations would prevent the plaintiff from "being able to do any work in the economy of the country." (R. 498.)

Now, the Law Judge seemed to take great umbrage with this evidence and attempted a redirect by limiting the question to "simplified work" the plaintiff could "do." (R. 499-500.) Undeterred, the VE reminded the Law Judge that a normal work environment presents sufficient interaction with conflicting requests that "if you get nine or more the probability of successful work beyond three months is very, very small, nil." (R. 499.) When pressed again by the Law Judge, the VE held fast to his opinion, indicating his disagreement with the notion that jobs would be available, even in an otherwise "stable environment" to a person with plaintiff's maladies. (R. 500.)[2] The Law Judge simply declared that the VE was testifying outside his expertise, but he continued to prod favorable responses from the VE to questions about

---

[2]The VE told the Law judge that there are no "wonderfully stable environments in the work setting other than the sheltered workshops" where plaintiff could function. (R. 501.) Of course, that is not substantial gainful employment.

5

availability of work for a person like plaintiff to which the VE responded "I think it's iffy" essentially because people in the settings revealed will "scream and holler" and a person with plaintiff's profile will respond inappropriately to the provocations. (R. 502.)

While the Law Judge did not seem to like it, the VE was doing in this case exactly what he was called there to do, namely consider all the evidence relevant to the availability of work for a person like plaintiff and offer an opinion about it. *See Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989). The Commissioner offers that the court should affirm based on the Law Judge's assessment of plaintiff's RFC. (Commissioner's Brief, p. 11.) The problem is that while the Law Judge certainly appeared set on shoe horning plaintiff's capacity into the word "do," in a "low stress environment" and while he could "do" a number of tasks as the Law Judge so found, the VE offered unrebutted expert and clinical evidence that there is no such thing as a "low stress environment" in the only job plaintiff could "do," namely dishwasher. The VE was trying to tell the Law Judge that low stress and dishwashing do not go together in the real world because of people, the very ignition source to touch off the potential for plaintiff's "going postal." Neither the Law Judge nor the Commissioner seem to have gotten that point.

In the end, the substantial evidence does not support the Commissioner's final decision. Accordingly, the undersigned RECOMMENDS that an Order enter REVERSING the Commissioner's final decision, GRANTING plaintiff's motion for summary judgment, ENTERING judgement for the plaintiff and RECOMMITTING the case to the Commissioner solely for the award of proper benefits.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are

entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

Dec 7, 2007
Date