
CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

SEP 2 6 2008

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JAY C. DENNIS,<br><br>          *Plaintiff,*<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>*Commissioner of Social Security,*<br><br>          *Defendant.* | CIVIL ACTION NO. 3:07-CV-00003<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

  This matter is before the Court upon consideration of the parties' cross-motions for summary judgment (docket nos. 13 and 15), the Report and Recommendation ("Report") of United States Magistrate Judge B. Waugh Crigler (docket no. 17), and the objections (docket no. 19) thereto filed by the Commissioner of Social Security ("Commissioner," or "Defendant"). In his Report, the Magistrate Judge recommends that I reverse the Commissioner's final decision denying Plaintiff's claims for a period of disability and disability insurance benefits under the Social Security Act; grant Plaintiff's motion for summary judgment; and enter judgment for Plaintiff and remand "the case to the Commissioner solely for the award of proper benefits." The Commissioner timely filed objections to the Report, obligating the Court to undertake a *de novo* review of those portions of the Report to which objections were made. 28 U.S.C. § 636(b); *Orpiano v. Johnson*, 687 F.2d 44, 48 (4th Cir. 1982). Having conducted such a review, I find that the objections are without merit and that the Magistrate Judge was correct in finding that the Commissioner's final decision is not supported by substantial evidence. For the reasons stated herein, I will overrule the Commissioner's objections and will adopt the Magistrate Judge's Report *in toto*.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

On April 24, 2004, Plaintiff Jay C. Dennis filed an application for a period of disability and disability insurance benefits, alleging disability beginning June 1, 2004. (R. 12.) Plaintiff's claim was denied initially and upon reconsideration by the Disability Determination Service ("DDS"). (*Id.*) On June 27, 2005, Plaintiff timely filed a written request for a hearing before an Administrative Law Judge (ALJ). (*Id.*) The hearing before the ALJ was conducted on March 21, 2006. (*Id.*) On September 8, 2006, the ALJ decided that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act ("Act"). (R. 18.)

In reaching this conclusion, the ALJ found that Plaintiff's impairments – post-traumatic stress disorder with depression – were severe, but that Plaintiff retained the residual functional capacity ("RFC") to perform simple tasks with minimal interaction with others, at all levels of exertion. (R.14-15.) Furthermore, the ALJ determined that, based upon the ALJ's characterization of the testimony of a vocational expert ("VE"), Plaintiff is capable of performing past relevant work as a dishwasher, and that this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (R. 14.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (R. 18.)

Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review and adopted the ALJ's decision as the final decision of the Commissioner. (R. 5-7.) Plaintiff then filed the instant civil action, seeking judicial review of the Commissioner's final decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I referred the matter to United States Magistrate Judge B. Waugh Crigler for proposed findings of fact and a recommended disposition. After the parties

---

[1] The facts have been adduced from the record, and have been reiterated several times in the Magistrate Judge's Report and the parties' submissions. I will introduce additional facts as necessary in my discussion.

Case 3:07-cv-00003-NKM-BWC    Document 22    Filed 09/26/08    Page 2 of 13    Pageid#: 88

filed cross-motions for summary judgment, the Magistrate Judge issued his Report, to which the Commissioner timely filed objections.

## II. STANDARD OF REVIEW

The Commissioner's factual findings must be upheld if they are supported by substantial evidence and were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (citation omitted), and consists of "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is responsible for evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527–404.1545. Any conflicts in the evidence are to be resolved by the Commissioner (or his designate, the ALJ), not the courts, and it is immaterial whether the evidence will permit a conclusion inconsistent with that of the ALJ. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). The Court may not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Instead, the Court may only consider whether the ALJ's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Craig*, 76 F.3d at 589. However, determining whether the evidence presented by the ALJ to support his decision amounts to substantial evidence is a question of law, and therefore will be considered anew. *Hicks v. Heckler*, 756 F.2d 1022, 1024-25 (4th Cir.

1985) (*abrogated on other grounds by Lively v. Bowen*, 858 F.2d 177, 180 (4th Cir. 1988). Furthermore, "ALJs have a duty to analyze 'all of the relevant evidence' and to provide a sufficient explanation for their 'rationale in crediting certain evidence.'" *Bill Branch Coal Corp. v. Sparks*, 213 F.3d 186, 190 (4th Cir. 2000) (citations omitted).

Federal Rule of Civil Procedure 72 permits a party to submit objections to a magistrate judge's ruling to the district court within ten days of the order. Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b). The district court conducts a *de novo* review of those portions of the magistrate's report and recommendation to which specific objections were made. Fed. R. Civ. P. 72(b)(3); *Orpiano*, 687 F.2d at 48. Those portions of the magistrate judge's report and recommendation to which no objection are made will be upheld unless they are clearly erroneous or contrary to law. *See Orpiano*, 687 F.2d at 47 (citing *Webb v. Califano*, 468 F. Supp. 825, 830 (E.D. Cal.1979)). The district court may accept, reject, or modify the recommended disposition based on its *de novo* review of the recommendation and the objections made. Fed. R. Civ. P. 72(b)(3).

### III. Discussion

In his Report, the Magistrate Judge found that, in determining that Plaintiff could work as a dishwasher, the ALJ "disregard[ed] the evidence of a [VE], whom [the ALJ had] called to opine on the availability of jobs within the categories of plaintiff's past work." Based upon this "disregard" for the VE's testimony, the Magistrate Judge found that the Commissioner's final decision was not supported by substantial evidence. The Commissioner objects, contending that

-4-

Case 3:07-cv-00003-NKM-BWC    Document 22    Filed 09/26/08    Page 4 of 13    Pageid#: 90

the substantial evidence supports the ALJ's decision and that the Magistrate Judge "improperly re-weighed the evidence."[2]

As the Court has previously observed, the ALJ found, in his decision of September 8, 2006, that Plaintiff has the RFC "to perform **simple tasks with minimal interaction with others**, at all levels of exertion." (R. 15; emphasis added.) The ALJ's decision further states that, given Plaintiff's RFC and the testimony of the VE, Plaintiff "is capable of performing past relevant work as a dishwasher. This work does not require the performance of work-related activities precluded by [Plaintiff's RFC]." (R. 17.) Regarding his reliance upon the VE's testimony, the ALJ elaborated as follows: "The vocational expert testified that an individual with the residual functional capacity as determined could perform the job as dishwasher as the claimant performed it and as it is generally performed in the national economy." (R. 17-18.) Accordingly, the ALJ determined that the Plaintiff was not disabled during the relevant period. (R. 18.)

The transcript of the hearing before the ALJ on March 21, 2006, indicates that the ALJ's characterization of the facts obtained from the VE's testimony is erroneous, and that the Magistrate Judge was correct in determining that the Commissioner's final decision, as embodied in the ALJ's decision of September 8, 2006, was not supported by substantial evidence.

The ALJ's decision largely relies upon the answers obtained from his initial examination of the VE, posing hypotheticals that did not take into account Plaintiff's specific limitations or,

---

[2] Defendant is cautioned that general objections to a Magistrate Judge's Report and Recommendation, reiterating arguments already presented, have the same effect as a failure to object. See *Veney v. Astrue*, 539 F. Supp.2d 841, 845 (W.D. Va. 2008) (citations omitted).

Case 3:07-cv-00003-NKM-BWC   Document 22   Filed 09/26/08   Page 5 of 13   Pageid#: 91

when the hypotheticals were properly posed, elicited responses from the VE that did not take into account Plaintiff's specific limitations.[3] The ALJ called the VE to testify, verified his professional qualifications, and accepted his testimony without objections. (R. 485-86.) The VE testified that Plaintiff had previously "functioned as a dishwasher for . . . about eight months. . . ." (R. 488, 489.) During the ALJ's examination of the VE, the ALJ posed the following hypothetical, which the Court quotes, along with the ensuing discussion:

> [ALJ]: **Assume you're dealing with a person who can do work limited to simple tasks, no exertional limits**. Could such a person do the claimant's past work as actually performed?
>
> [VE]: Yes, he could certainly do the dish washing.
>
> [ALJ]: Dish washing.
>
> [VE]: In terms of unskilled, simple tasks, yeah.
>
> [ALJ]: Is the same true as generally performed in the national economy?
>
> [VE]: Yes, uh-huh. Let's see, **if there's** no physical or **other issues** he could do the bellman type job.[4]

(R. 490; emphasis added.) It is clear that, in posing this hypothetical, the ALJ did not properly apply the Plaintiff's RFC "to perform simple tasks **with minimal interaction with others**, at all levels of exertion." (Emphasis added.) However, the ALJ further refined the hypothetical, as indicated in the following discussion:

---

[3] As explained *infra*, it is clear from my review of the ALJ's decision of September 8, 2006, and the transcript of the hearing before the ALJ on March 21, 2006, that the decision articulated by the ALJ can only rely upon his initial hypothetical queries, which were not properly crafted. (R. 17, 490-91.)

[4] The ALJ determined that Plaintiff had worked as a bellhop for only three or four months. The VE opined that such "[s]imple" employment "would be possible with no physical restrictions." (R. 490.) The ALJ apparently concluded that such jobs are precluded by Plaintiff's RFC (requiring "minimal interaction with others"). (R. 491.)

-6-

> [ALJ]: Assume you're dealing with a person who can do, again, work limited to simple tasks with **minimal interaction with others**. Could such a person do the claimant's past work as actually performed?
>
> [VE]: Was that (INAUDIBLE) would be the dish washing would be the only possible one that he'd done before.
>
> [ALJ]: And as generally performed in the national economy?
>
> [VE]: Yes. There would be a few people around, those people in the kitchen, etc. **There wouldn't be any dealing with the public**. And that would meet those qualifications.

(R. 491; emphasis added.) In this instance, although the ALJ's hypothetical incorporated the "minimal interaction with others" limitation, the VE's response indicates that he applied a limitation in "dealing with the public," not a "minimal interaction with others" limitation. An ALJ must take into account all the specific limitations of a claimant when crafting a hypothetical question to a VE. *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989). Otherwise, the relevance and value of the VE's testimony is greatly diminished. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2006) (quoting *Walker*, 889 F.2d at 50). Failure to consider all the claimant's functional limitations and then relying upon an incomplete hypothetical when reaching a judgment constitutes an error of law. *Hancock v. Barnhart*, 206 F. Supp.2d 757, 767 (W.D. Va. 2002). Accordingly, I find that the Magistrate Judge was correct in determining that the ALJ's decision is not based upon substantial evidence, because the hypotheticals posed to the VE by the ALJ failed to consider all of plaintiff's functional limitations and, when the hypotheticals did incorporate the functional limitation of "limited interaction with others," the VE's response indicated that he applied a limitation in "dealing with the public," not a "minimal interaction with others" limitation.

Case 3:07-cv-00003-NKM-BWC   Document 22   Filed 09/26/08   Page 7 of 13   Pageid#: 93

Further review of the record supports a finding that the ALJ's decision was not based upon substantial evidence because (i) the hypotheticals submitted to the VE were not properly crafted, and (ii) the ALJ's recounting of the facts, including his characterization of the VE's testimony, is not borne out by the record. Upon cross-examination by Plaintiff's counsel, the VE considered additional evidence that had not been factored into the hypotheticals posed by the ALJ. (R. 494, citing Exhibit 8F.) This included medical evidence, provided by DDS psychologists, indicating that Plaintiff suffered from the following: "reoccurring severe panic attacks manifest[ed] by sudden unpredictable onset of intense apprehension, fear, terror and [a] sense of impending doom"; "recurrent and intrusive recollection of traumatic experiences which are a source of marked distress"; and "a medically determinable impairment" in the form of "general anxiety disorder." (R.495, citing Exhibit 8F.) The VE stated that, regarding Plaintiff's ability to perform work in the national economy, and given these medical diagnoses and findings, "those outcomes indicated unmanaged or uncontrolled activity detrimental to the work space and himself in them. There were such a number that it would be impossible to assume that there's any job that he could do given those findings." (R. 495-96, citing Exhibit 8F.) Upon further questioning, the VE observed that, in a mental RFC assessment performed by an examining medical source (a DDS psychologist), Plaintiff was found "markedly limited" in a number of categories, including "the ability to sustain an ordinary routine without special supervision," and "the ability to complete a normal work day and work week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and lengths of rest periods." (R. 497, citing Exhibit 7F.) The VE observed that those limitations would eliminate Plaintiff's ability to perform gainful employment nationally. (R. 497.)

Case 3:07-cv-00003-NKM-BWC   Document 22   Filed 09/26/08   Page 8 of 13   Pageid#: 94

But the ALJ, in his decision of September 8, 2006, merely noted that "DDS psychologists had marked 10 boxes as 'moderately limited'. . . ." (R. 17, n. 2.) To be sure, one of the DDS psychologists found Plaintiff to be "moderately impaired" and "moderately limited" in a number of categories. (R. 496-97.) However, there is no indication in the record that any plurality of psychologists defined Plaintiff as "moderately" impaired or limited in 10 categories, while the record does indicate that there are discrepancies between the RFC assessments, one of which indicates that Plaintiff scored as "markedly limited" in a predominant number of categories, while another indicates that he scored as "moderately" limited or impaired. Yet, the ALJ's decision does not account for this. A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion. *Mastro*, 270 F.3d at 178; 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").[5] Here, the ALJ has not given any such explanation for giving more weight to one treating source's medical opinion over another. Accordingly, the ALJ's decision is not supported by substantial evidence.

---

[5] An ALJ may properly rely on a non-examining physician's assessment of residual functional capacity where the assessment is based upon a careful assessment of medical evidence and does not contradict the findings of an examining physician. *Villa v. Sullivan*, 895 F.2d 1019 (5th Cir. 1990).

-9-

In addition to eliding the divergence of the medical opinions, the ALJ's decision summarily misstates the VE's testimony. (R. 17, n.2.) Regarding the categories where one of the treating sources determined that Plaintiff was "moderately" limited or impaired, the VE stated that

> the sheer number [of those categories where Plaintiff was found moderately limited or impaired] . . . usually has shown in my experience . . . you're probably dealing with someone who is going to have a very, very serious time making adjustments in the field of work until they are re-rated or brought up in other words by medical diagnosis. One would not expect with one getting such scores as being able to work in the economy of the country.

(R. 498.) The VE added that the number of moderate impairments indicate "too many areas where things could go wrong." (*Id.*)

On re-examination of the VE by the ALJ, the ALJ posed further questions regarding potential work settings. (R. 499-502.) The ALJ asked a number of questions regarding work in "a stable environment," and the VE's answers indicated that, given the evidence he had reviewed, the only "stable environment" that would suit Plaintiff, given the "realities" of workplaces, including "screaming cook[s]" and the like with regard to dishwashing jobs,[6] was a "sheltered workshop." (*Id.*) At one point, the ALJ stated that, "notwithstanding the checkmarks," the DDS psychologists had concluded that Plaintiff "could perform simple, routine, repetitive work in a stable environment." (R. 499.) Thus, the ALJ inquired, "could such a person do the claimant's past work?" (*Id.*) The VE, applying his knowledge of the workplace, answered that the "probability of successful work beyond three months is very, very small, nil." (*Id.*) When the VE attempted to answer the ALJ's further query regarding "simple, routine,

---

[6] Regarding the facility where Plaintiff formerly worked as a dishwasher, the VE testified, "I know it well," adding that he had "been all through that as a matter of fact, in the kitchen and out of the hall." (R. 488-89.) Thus, it is clear that the VE was familiar with "the job of dishwasher as the claimant performed it. . . ." (R. 17).

Case 3:07-cv-00003-NKM-BWC  Document 22  Filed 09/26/08  Page 10 of 13  Pageid#: 96

repetitive work in a stable environment," the ALJ cut him off, stating that the VE was "getting outside [of his area of] expertise. . . ." (R. 499-500.) The VE responded that a "sheltered workshop" is the only "stable work environment" that he believes would lead to a successful outcome for Plaintiff. (R. 500.) The ALJ restated the query, substituting "low stress environment" for "stable work environment," but the VE maintained that "[t]here are no wonderfully stable environments in the work setting other than the sheltered workshops. . . ." (R. 501.) When the ALJ specifically inquired, "Is dish washing normally done in a simple task job in a stable environment?" the VE responded, "It is unless you've got a screaming cook. . . ." (*Id.*) The VE added that the likelihood of such a work environment proving "stable" is "iffy," based upon his experience and observations about workplace hierarchies and quality of supervision. (R.501-02.) When the ALJ insisted that "normally it's a simple task in a stable environment," the VE would allow only that "[t]he tasks are simple," maintaining that "it's the setting. . . . where we run into the difficulty." (R. 502.)

The ALJ's decision merely notes that, with regard to his determination of Plaintiff's RFC, he gave "no weight to the vocational expert's second guessing of the opinions of the DDS psychologists." (R. 17, n. 2.) However, the entirety of the record relevant to the determination of whether Plaintiff "could perform the job as dishwasher as the claimant performed it," does not suggest that the VE engaged in any "second guessing" of medical opinions.[7] Rather, as the Magistrate Judge observed, the VE merely offered his opinion based upon his consideration of all the evidence relevant to the availability of work for a person like Plaintiff. *See Walker*, 889 F.2d at 50-51 ("The purpose of bringing in a vocational expert is to assist the ALJ in determining

---

[7] This is particularly true in light of the ALJ's mischaracterization of the medical opinions as unanimous, which they are not.

-11-

whether there is work available in the national economy which this particular claimant can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record. . . . [I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity. . . . [T]he opinion of a vocational expert . . . should be based on the claimant's condition as gleaned from the entire record.") (citations omitted). The ALJ's footnote dispensing with the VE's testimony, summarily stating that the VE had "second guess[ed] . . . the opinions of the DDS psychologists," does not constitute a determination based upon substantial evidence, particularly given the ALJ's flawed recitation of the divergent opinions of the DDS psychologists and his failure to provide his reasons for weighing one medical opinion more heavily than another. *See Mastro*, 270 F.3d at 178; *see also* 20 C.F.R. § 404.1527(d)(2).

## IV. CONCLUSION

Having undertaken a *de novo* review of those portions of the Report to which objections were made, I find that the Commissioner's final decision is not supported by substantial evidence, and that the Magistrate Judge was correct in finding that, contrary to the ALJ's decision, Plaintiff is unable to work as a dishwasher given his functional limitation requiring "limited interaction with others." Accordingly, I will enter an Order overruling the Commissioner's objections; adopting the Magistrate Judge's Report; reversing the Commissioner's final decision; granting Plaintiff's motion for summary judgment; denying the Commissioner's motion for summary judgment; entering judgment for Plaintiff; recommitting

Case 3:07-cv-00003-NKM-BWC   Document 22   Filed 09/26/08   Page 12 of 13   Pageid#: 98

the case to the Commissioner solely for the award of proper benefits; and dismissing this action and striking it from the active docket of the Court.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record and to United States Magistrate Judge B. Waugh Crigler.

Entered this 26th day of September, 2008.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE